COFFEE CITY et al., Appellants,

v.

B. J. THOMPSON, Appellee.

No. 882.

Court of Civil Appeals of Texas, Tyler.

March 25, 1976.

Rehearing Denied April 22, 1976.

F. Wilbert Lasater, Potter, Lasater, Guinn, Minton & Knight, Tyler, Jack Y. Hardee, Fields, Fields & Hardee, Athens, for appellants.

A. D. Henderson, Palestine, for appellee.

McKAY, Justice.

Appellee, B. J. Thompson, brought suit against the Town of Coffee City, Texas; Roland Wayne Phillips, individually and as mayor of Coffee City; Mary Phillips, individually and as city secretary of Coffee City; Paul Phillips and Wilbert Davis. Appellee sought to have the zoning ordinance of the Town of Coffee City declared null and void, and prayed for a writ of mandamus or mandatory injunction for the issuance of a building permit for the construction of a building in which to operate a package store for the sale of alcoholic beverages. The property of appellee was zoned "residential" by the zoning ordinance of Coffee City. Trial was before the court without a jury.

The trial court rendered judgment that the zoning ordinance was invalid and null and void, and ordered the Town of Coffee City, Mary Phillips, city secretary, and all other officials to grant appellee's building permit to construct a building for the operation of a package liquor store. Appellants bring this appeal from the portion of the judgment holding the zoning ordinance, being Ordinance No. 1, null and void, and of no further force and effect. We affirm.

The trial court made and filed Findings of Fact and Conclusions of Law. The Town

of Coffee City was incorporated under the laws of Texas on December 18, 1969. At the first election Wayne Phillips was elected mayor, Paul Phillips was elected councilman, and Mary Phillips was appointed city secretary, all of whom are parties individually and in their official capacities. On January 19, 1970, Ordinance No. 1[1] was adopted by the Town Council. Under the local option provisions of the Texas Liquor

1. "ORDINANCE I.

"AN ORDINANCE FOR THE ISSUANCE OF BUILDING PERMITS PRESCRIBING REGULATIONS CONCERNING THE SETBACK OF COMMERCIAL IMPROVEMENTS FROM HIGHWAY AND ROAD RIGHT–OF–WAY DEFINING COMMERCIAL PROPERTY, AND RESIDENTIAL PROPERTY, PROVIDING THAT NO PERSON MAY BE ISSUED A BUILDING PERMIT FOR A STRUCTURE TO BE USED FOR A LIQUOR OR PACKAGE STORE OR A STORE FOR THE SALE OF BEER AND/OR WINE ON OR OFF PREMISES UNLESS SUCH PERSON SHALL HAVE BEEN A RESIDENT OF COFFEE CITY, TEXAS, FOR AT LEAST ONE (1) YEAR PRIOR TO FILING SUCH APPLICATION, PROVIDING THAT NO PERSON SHALL ENGAGE IN THE RETAIL LIQUOR BUSINESS OR IN THE BUSINESS OF RETAILING BEER AND/OR WINE ON OR OFF PREMISES UNLESS SAID PERSON SHALL HAVE BEEN A RESIDENT OF COFFEE CITY, TEXAS, FOR AT LEAST ONE (1) YEAR, ESTABLISHING FEES FOR BUILDING PERMITS AND PROVIDING PENALTIES FOR THE VIOLATION OF THIS ORDINANCE IN ANY SUM NOT LESS THAN TEN ($10.00) DOLLARS AND NOT MORE THAN ONE HUNDRED ($100.00) DOLLARS EACH AND EVERY DAY OR A FRACTION THEREOF DURING WHICH THIS ORDINANCE IS VIOLATED IN DECLARING EACH SUCH DAY TO BE A SEPARATE OFFENSE.

"BE IT ORDAINED BY THE TOWN COUNCIL OF THE TOWN OF COFFEE CITY, TEXAS:

"SECTION I.

"This entire ordinance is and shall be deemed an exercise of the police power of the State of Texas, and of the Town of Coffee City, for the public safety, comfort, convenience and protection of the town and citizens of said town, and all of the provisions hereof shall be construed for the accomplishment of that purpose.

"SECTION II.

"The following property in the city limits of Coffee City, Texas, shall be and is hereby zoned commercial property:

(The metes and bounds description is omitted.)

"All of the rest of the property in the city limits of Coffee City, Texas, not hereinabove zoned as commercial property is hereby zoned as residential property and shall hereafter be residential property.

"SECTION III.

"No person shall erect any structure of any nature upon any commercial property within the limits of the town of Coffee City, Texas, unless said structure is set back from the boundary of the highway or public road right-of-way a minimum of forty (40) feet distance. No part of any structure shall extend or obtrude toward the highway or public road so as to be within the forty feet limit herein prescribed.

"SECTION IV.

"No person shall commence the construction of any building or structure of any nature whatsoever within the limits of the town unless that person has first obtained a building permit. Any person desiring a building permit shall make application to the City Secretary and shall accompany said application by the fee hereinafter prescribed. The City Secretary shall determine whether the proposed structure complies with all ordinances of the town and shall upon the receipt of the proper fee then issue a building permit. Each application for a building permit shall state the cost of the construction of the proposed building or other structure and the fee for such building permit shall be One Dollar ($1.00) for each Thousand Dollars ($1,000.00). If the City Secretary shall conclude that the applicant is not truthfully representing the cost of construction, she may withhold the issuance of the building permit, in which event the issuance of a permit shall be determined by the town council at its next regular or called meeting.

"SECTION V.

"All applications for building permits shall specify the purpose for which the proposed structure is to be used. Such application shall further state the name in full of the applicant, the age of applicant, and the length of residence in the corporate city limits of Coffee City. No permit shall be issued to any person for the construction of a building to be used as a package store or liquor store and no permit shall be issued to any person for the construction of a building to be used as a place of business for the retail sale of beer and/or wine either on or off premises as such terms are defined in the Liquor Control Act of the State of Texas unless the owner of such building shall have been a resident of the City of Coffee City, Texas, for not less than one (1) year prior to the filing of such application. No person shall engage in the retail sale of liquor or engage in the retail sale of beer and/or wine either on or off premises unless such person shall have been a bona fide resident of Coffee City, Texas, for at least one (1) year prior to the commencement of business. Nothing in this section, however, shall apply to or affect any person who is engaged in the business of retailing liquor, beer and/or wine on or off premises on the effective date of this act in Coffee City,

Control Act, the Town of Coffee City legalized the sale of all alcoholic beverages, for off-premises consumption only, on February 22, 1970.

Under the provisions of Ordinance No. 1 appellee's property was classified as "residential". On August 2, 1973, appellee filed with the city secretary and Town Council an application and request that his property be changed from "residential" classification to "commercial" classification, and such request was denied on September 12, 1973, by the Council.[2]

On October 4, 1973, appellee filed an application for a building permit with the city secretary to construct a building for use as a package store and the sale of other alcoholic beverages. The appropriate filing fee was tendered with such application. On October 25, 1973, the application for the building permit was refused on the ground that the property in question was zoned "residential" under Ordinance No. 1.

At the time of the adoption of Ordinance No. 1, January 19, 1970, the town did not have a Zoning Commission or a Planning and Zoning Commission, nor did it have such a commission at the time of trial.

Cora Bradley had an undivided interest in appellee's property at the time of the adoption of Ordinance No. 1 and had actual notice of the proposed ordinance and requested that the property be zoned "residential".

The appellants, Roland Wayne Phillips, mayor, and his brother, Paul Phillips, a member of the Town Council, jointly own the package store, Kilo Drive-In, in Coffee City, and it is the only package store in the Town of Coffee City located on Highway No. 155. At all times material to this case Coffee City had a population not less than 200 nor more than 1,000 inhabitants.

Prior to the meeting of the Council on January 19, 1970, written notices of such meeting were posted in three public places

Texas, and this section further does not affect any person who has heretofore made application for a building permit for the purpose of constructing a building to be used as a package or liquor store or for retailing beer and/or wine for on or off premises consumption.
"SECTION VI.
"Any person, firm or corporation violating any of the provisions of this ordinance of (sic) failing to observe any of the provisions hereof, shall be deemed guilty of a misdemeanor and upon conviction shall be fined in any sum not less than Ten Dollars ($10.00) nor more than One Hundred Dollars ($100.00) and each and every day or fraction of a day during which this ordinance or any part thereof shall be violated shall be deemed a separate offense and punishable as such.
"SECTION VII.
"Each and every provision, paragraph, sentence and clause of this ordinance has been separately considered and passed by the Town Council of the Town of Coffee City, and each said provision, paragraph, sentence and clause would have been separately passed without any other provision, and if any provision, paragraph, sentence or clause hereof should be ineffective, invalid, or unconstitutional for any cause, it shall not impair or affect the remaining portion nor any other part hereof, but the valid portion shall be enforced in the manner as if it had been passed alone.
"SECTION VIII.

"The fact that the Town of Coffee City, Texas, now has no ordinance governing the matters regulated herein and the fact that construction of building (sic) and other structures is not now regulated so as to protect the citizens of the Town of Coffee City in their property and persons as aforesaid, creates an emergency, which is here and now declared, and this ordinance shall take effect and be in force, from and after its passage and publication, as provided by law. "PASSED AND APPROVED THIS THE 19TH DAY OF JANUARY, 1970."

2. Among the reasons given for denying the request to rezone were:
(1) that the property is best suited for residential property, there being a residence close by; (2) that a tract of land adjacent to the land sought to be rezoned has been set aside for a public park and the best use of the property would be to remain residential since it is adjacent to and would be close to a public park; (3) that to rezone this property would constitute spot zoning; (4) that to rezone the property would interfere with the best interest and welfare of the citizens of Coffee City, Texas; (5) that the application to rezone the property is not in proper form and order; (6) a request was made when the property was originally zoned for residential, that it be zoned residential; (7) there have been complaints from citizens in Coffee City, Texas, to leave the property as residential property.

in the Town of Coffee City at least three days prior to such meeting. No personal notice was given to any property owner prior to the council meeting of January 19, 1970, regarding the proposed adoption of Ordinance No. 1. Subsequent to the passage of Ordinance No. 1, the entire ordinance was published in the *Athens Review*, Athens, Texas, a weekly newspaper of general circulation in Henderson County, Texas.

The trial court found in conclusions of law that Ordinance No. 1 is invalid (1) because it is vague and indefinite in that it does not contain a prohibition of commercial use such as the use sought by appellee in a residential area nor does it define or furnish guidelines for commercial or residential use; (2) because the Town of Coffee City failed to provide for a Zoning Commission in order to exercise zoning powers as required by Art. 1011f;[3] (3) because of the failure of the Town of Coffee City to follow the procedural requirements of Art. 1011d; (4) because of the failure of the Town of Coffee City to give personal notice to the appellee's predecessors in title and for failure to comply with the notice requirements of Art. 1011d. The Court also found that Art. 974d–18, does not validate Ordinance No. 1 in that the validating act has no application to an invalid ordinance such as the instant one.

Appellant brings three points of error contending that the trial court erred in declaring Ordinance No. 1 invalid (1) for vagueness, (2) for failure of the Town of Coffee City to provide for a Zoning Commission, and (3) for failure of the Town of Coffee City to give personal notice to appellee's predecessors in title and for failure to comply with the procedural requirements of Art. 1011d.

Appellants' first point complains that the trial court erred in finding Ordinance No. 1 invalid because it is vague and indefinite. Appellants argue that the ordinance is not uncertain simply because it does not define "residential" and "commercial", and that the word "residential" has a clear and well understood meaning—that is, the use of property for living purposes as distinguished from use for business or commercial purposes. Appellants further say that an ordinance may be adequate as a rule of civil conduct even though it may be too indefinite and uncertain to be enforced by criminal prosecution. Appellants cite *Vaccaro v. Rougeou*, 397 S.W.2d 501 (Tex.Civ. App.—Houston 1966, writ ref'd n. r. e.), a restrictive covenant case, as authority for the meaning of the words "residential" and "commercial".

Appellants make the further argument that appellee knew his property was zoned residential before he acquired it and before he applied for a building permit, and that he does not have standing to assert the rights of others.

On the other hand, appellee contends that the ordinance is vague, ambiguous, uncertain and incomplete because (1) it fails to prohibit commercial uses of property classified or zoned residential; (2) it fails to provide any guideline for the city secretary in either issuing or denying a building permit; and (3) it fails to define uses permitted in the areas zoned residential and the areas zoned commercial. Appellee argues that since the ordinance fails to expressly restrict the use of properties zoned residential to residential use, that is, it fails to prohibit a commercial use of property zoned residential, it would have to be implied that a commercial use is not permitted in a residential area, and be implied that a residential use is not permitted in area zoned commercial. Appellee points out that the ordinance has no provision making it unlawful or prohibiting the use of property for commercial purposes in a residential area, nor does Ordinance 1 contain a directive to the city secretary requiring her to deny a building permit for construction of a commercial building simply because it is located in the residential zone.

In *Lone Star Gas Co. v. Kelly*, 140 Tex. 15, 165 S.W.2d 446 (Tex.Comm'n.App. 1942, opinion adopted), it is said, "A statute

---

3. All references are to Vernon's Texas Annotated Civil Statutes unless otherwise noted.

which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law."

*Sanders v. State Department of Public Welfare,* 472 S.W.2d 179 (Tex.Civ.App.— Corpus Christi 1971, writ dism'd), contains this language:

"It is a general principle of law that a statute or regulation must be definite to be valid. Due process of law in legislation requires definiteness or certainty. If a regulation is incomplete, vague, indefinite and uncertain, and it forbids the doing of an act which is so vague, that men of common intelligence must necessarily guess at its meaning and that such men differ as to application, it violates the first essential of due process of law."

See 56 Am.Jur.2d Municipal Corporations, Sec. 367, p. 394.

Applying the above principles to the ordinance here in question, we are of the opinion such ordinance is vague, uncertain, indefinite and incomplete and, therefore, invalid. It does not prohibit the building of a residence upon a commercially zoned area, nor does it prohibit the erection of a commercial building upon an area zoned residential. It simply describes a certain area as commercial, and then it declares all other property is zoned residential. It does not describe what type or kind of residential structures may be built. Some buildings, such as an apartment building, may have both residential and commercial use.

■ The ordinance does not provide any criteria or guidelines for the city secretary to follow in granting or refusing building permits; and, therefore, it must be implied that the city secretary has discretionary authority without restriction in issuing or denying such permits. An ordinance leaving the question of issuing or denying building permits to the arbitrary discretion or determination of the city secretary without any rule or standard to follow is invalid. *Spann v. City of Dallas,* 111 Tex. 350, 235 S.W. 513, 517, 19 A.L.R. 1387 (1921); *Cross-*

*man v. City of Galveston,* 112 Tex. 303, 247 S.W. 810, 815, 26 A.L.R. 1210 (1923); *City of Houston v. Freedman,* 293 S.W.2d 515 (Tex.Civ.App.—Galveston 1956, writ ref'd n. r. e.); 56 Am.Jur.2d Municipal Corporations, Sec. 369, p. 396.

The only provision (Sec. IV) in the ordinance for an application for a building permit to come before the Town Council results from the withholding of the issuance of a building permit by the city secretary if she "shall conclude that the applicant is not truthfully representing the cost of construction . . . ."

We overrule appellants' point one.

Appellants say by their point two that the trial court erred in declaring Ordinance No. 1 invalid for failure of the Town Council to provide for a Zoning Commission.

Art. 1011a, provides that, "For the purpose of promoting health, safety, morals, and for the protection and preservation of places and areas of historical and cultural importance and significance, or the general welfare of the community, the legislative body of cities and incorporated villages is hereby empowered" to regulate the use of property. Art. 1011b, provides that the municipal legislative body may divide the municipality into districts, and that "within such districts it may regulate and restrict the erection, construction, reconstruction, alteration, repair, or use of buildings, structures, or land. All such regulations shall be uniform for each class or kind of building throughout each district, but the regulations in one district may differ from those in other districts."

Art. 1011f, reads in part as follows:

*"In order to avail itself of the powers* conferred by this Act, such legislative body *shall* appoint a commission, to be known as the Zoning Commission, to recommend the boundaries of the various original districts and appropriate regulations to be enforced therein. Such Commission *shall* make a preliminary report and hold public hearings thereon before submitting its final report, and such legislative body *shall not* hold its public

hearings or take action until it has received the final report of such Commission; . . . Written notice of all public hearings before the Zoning Commission on proposed changes in classification *shall* be sent to owners of real property lying within two hundred (200) feet of the property on which the change in classification is proposed, such notice to be given, not less than ten (10) days before the date set for hearing, to all such owners who have rendered their said property for city taxes as the ownership appears on the last approved city tax roll . . ." (Emphasis added.)

Appellants contend that Art. 974d–18, a validation statute affecting cities and towns of 1,000 inhabitants or less, which became effective in 1973, cured any failure by Coffee City to appoint a Zoning Commission or give notice to property owners and validated the act of the Town Council in enacting Ordinance No. 1. Section 3 of Art. 974d–18 provides:

"All governmental proceedings and acts performed by the governing bodies of such cities and towns and all officers thereof since their incorporation, or attempted incorporation, are hereby in all respects validated as of the respective date of the proceedings and acts."

Since the provisions of Art. 1011f relating to a Zoning Commission are made mandatory in character by using the word *shall* concerning the appointment of such a Commission, it appears that the Town Council of Coffee City, in order to avail itself of the power to enact a zoning ordinance, was required to appoint a Zoning Commission. No Zoning Commission was appointed; therefore, Ordinance No. 1 can be valid only if it is made valid by Art. 974d–18. We have found no Texas case, nor have we been cited one, which directly decides this question.

Validating acts are remedial and are to be liberally construed. *Perkins v. State,* 367 S.W.2d 140, 147 (Tex.1963). It was held in *State v. Bradford,* 121 Tex. 515, 50 S.W.2d 1065, 1078 (1932) that:

". . . where the act of some agent of the state or of some agency which must derive its power to act from the Legislature is void for the reason that, at the time the act was performed legislative power therefor had not been given, the Legislature may, in the absence of constitutional prohibition, supply by law operating retrospectively the power originally lacking so that the act which was originally void is valid and binding."

The case of *State v. Town of Bullard,* 312 S.W.2d 435 (Tex.Civ.App.—Texarkana 1958, writ ref'd n. r. e.), cited by Appellant cites, follows and quotes from *Bradford.*

*Burch v. City of San Antonio,* 518 S.W.2d 540 (Tex.1975) held that the Legislature has the power to enact curative or remedial legislation and that such legislation should be given liberal construction.

There seems to be no question that if the Town Council of Coffee City had attempted to appoint a Zoning Commission or Board and there were irregularities in such procedure such irregularities would be cured by the validation statute. And if the Town Council had appointed a Zoning Commission and then there had been some irregularity in the adoption of a zoning ordinance it was the intention of the Legislature that such irregularities would be cured. But it is difficult for us to see an intention on the part of the Legislature to permit the Town Council of Coffee City to ignore a mandatory statute requiring the appointment of a Zoning Commission. The Town Council had not availed itself of the powers to enact a zoning ordinance, and we see no intention on the part of the Legislature to permit the Council to totally ignore Art. 1011f.

In *City of Hutchins v. Prasifka,* 450 S.W.2d 829 (Tex.1970), the court held that a validation act like the one here did not authorize the City Council to change a zoning classification of property by resolution—that there was no intent seen on the part of the Legislature to change a resolution into an ordinance, and that the property remained as it had been zoned before the resolution, and the resolution was not "validated" into an ordinance.

The case of *City of Mason v. West Texas Utilities Co.*, 237 S.W.2d 273 (Tex.1951), held that curative or remedial statutes should generally "be given the most comprehensive and liberal construction possible," but also held:

"The fundamental rule controlling the construction of a statute is to ascertain the intention of the Legislature expressed therein. That intention should be ascertained from the entire act, and not from isolated portions thereof. This Court has repeatedly held that the intention of the Legislature in enacting a law is the law itself; and hence the aim and object of construction is to ascertain and enforce the legislative intent, and not to defeat, nullify, or thwart it . . . It is settled that the intention of the Legislature controls the language used in an act, and in construing such act the court is not necessarily confined to the literal meaning of the words used therein, and the intent rather than the strict letter of the act will control." See 62 C.J.S. Municipal Corporations § 432, pp. 827–8.

In *City of Waco v. City of McGregor,* 523 S.W.2d 649 (Tex.1975), McGregor maintained that a validating act, Art. 974d–12, validated its attempted annexation by ordinance of a strip of land 261 feet wide down U. S. Highway 84 approximately five miles and then extending northerly to include a 900 acre tract owned by McGregor and used as a municipal airport. Under Art. 970a McGregor could annex an unincorporated area contiguous to its corporate limits, not a part of any other city, within its extraterritorial limits of one-half (½) mile, "provided, however, that such limitation shall not apply to the annexation of property owned by the city annexing the same." The 900 acre McGregor airport was within the extraterritorial limits of Waco. After stating that "curative statutes are liberally construed only to effectuate the intent of the legislature in enacting them and not to other ends", the court held that legislative intent must be applied, and that the McGregor ordinance violated Art. 970a, and that the validating statute, Art. 974d–12, "was not intended to and did not validate the annex-

ation of either noncontiguous or nonadjacent territory," and that "the portion of the stem along Highway 84 which intrudes into the exclusive extraterritorial jurisdiction of Waco is not adjacent to McGregor and so McGregor's attempted annexation of that portion of the stem was not validated by Article 974d–12. Since that part of the stem is not validly annexed, the airport is not contiguous to McGregor and so McGregor's attempted annexation of the airport was not validated by Article 974d–12." See *City of West Lake Hills v. State ex rel. City of Austin,* 466 S.W.2d 722 (Tex.1971).

This court held in *Rogers v. Raines,* 512 S.W.2d 725 (1974, writ ref'd n. r. e.), that the same validating act as here involved, Art. 974d–18, did not validate an attempted incorporation of a town or village where the area sought to be incorporated did not constitute a town or village.

Appellant concedes "that initially Ordinance No. 1 was not legally enacted because of the failure of the town of Coffee City to follow the various procedural requirements," but relies entirely upon Art. 974d–18 to validate the ordinance.

In *Bolton v. Sparks,* 362 S.W.2d 946 at page 950 (Tex.1962), the court said:

"The courts of this State have held ordinances and amendments to ordinances invalid where the express, mandatory provisions of our zoning statute have not been complied with. The steps directed to be taken for notice and hearing, when provided for in the law, are intended for the protection of the property owner, and are his safeguards against the exercise of arbitrary power. Each act required is essential to the exercise of jurisdiction by the City Council, and each must be rigidly performed. . . ."

In *Storm Bros. v. Town of Balcones Heights,* 239 S.W.2d 842 (Tex.Civ.App.—El Paso 1950, writ ref'd n. r. e.), there was some question raised about the procedure followed in appointing the members of the Zoning Commission, and the court held that the members of the Zoning Commission having been appointed and being de facto

members and serving as such, the validating act cured the defects complained of.

■ As is said in *Lawton v. City of Austin*, 404 S.W.2d 648 (Tex.Civ.App.—Austin 1966, writ ref'd n. r. e.), the police powers of the State are exercised by the Legislature enacting zoning laws, and the State has delegated some of this legislative authority to municipalities. Arts. 1011a–1011j. "The Legislature, of course, may put such restrictions on and provide the manner in which municipalities may exercise the delegation of this authority as it sees fit." *Lawton v. City of Austin*, supra.

63 Tex.Jur.2d Zoning, Sec. 69, p. 836, reads in part:

"In order to avail itself of the powers conferred by the Zoning Enabling Act, the governing body of a municipality must appoint a zoning commission to recommend the boundaries of the various original districts and appropriate regulations to be enforced therein. The zoning commission must make a preliminary report and hold public hearings thereon before submitting its final report, and the governing body of the municipality may not hold its public hearings or take action until it has received the final report of the zoning commission . . ."

The case of *Peters v. Gough*, 86 S.W.2d 515 (Tex.Civ.App.—Waco 1935, no writ), opinion by Judge Alexander, held that the statutory requirements in Arts. 1011a–1011j "are intended for the protection of the property owner and are his safeguards against an arbitrary exercise of the powers granted by the statute. Hence, it would appear that such preliminary steps required by the statute are essential to the exercise of such jurisdiction." To the same effect is *Tonroy v. City of Lubbock*, 242 S.W.2d 816 (Tex.Civ.App.—Amarillo 1951, writ ref'd n. r. e.); *City of Amarillo v. Wagner*, 326 S.W.2d 863 (Tex.Civ.App.—Amarillo 1959, writ ref'd n. r. e.); *City of San Antonio v. Pope*, 351 S.W.2d 269 (Tex.Civ.App.—Eastland 1961, no writ).

Some of the above cases point out that Art. 1011f provides that, "In order to avail itself of the powers conferred by this Act, such legislative body *shall* appoint a commission," and certain other steps must be taken.

In *City of Kermit v. Spruill*, 328 S.W.2d 219 (Tex.Civ.App.—El Paso 1959, writ ref'd n. r. e.), the court said:

"While the legislature may validate an ordinance passed by a municipal corporation which would otherwise be void, because of procedural defects in the manner of enactment, notice and public hearing, provided there is no constitutional objection to an act which would have embraced every power exercised in the ordinance; it does not follow that every such validating act is sufficient to cure substantive defects which render the application or subject of the ordinance ambiguous, vague or uncertain."

In *Richardson v. State*, 199 S.W.2d 239 at page 244 (Tex.Civ.App.—Dallas 1946, writ ref'd n. r. e.), is found this language:

"Acts curing defects in the incorporation of municipalities under the general law apply where a legal incorporation was sought to be established—that is, where the law was attempted to be followed, but in some particulars was not followed, and where, if the forms of law had not been omitted, the incorporation would have been valid. They do not apply where it was sought to incorporate in violation of law."

We have concluded that it was not the intention of the Legislature to validate Ordinance No. 1 of the town of Coffee City when Coffee City had not availed itself of the power to enact a zoning ordinance and that such failure was a substantive defect. It had not appointed a Zoning Commission nor had it attempted to do so. There was no Zoning Commission to make a preliminary report or to hold public hearings or to make a final report to the Town Council.

■ We are of the opinion that the reasoning in *Richardson v. State*, supra, pertaining to a validating act attempting to cure defects in the incorporation of a municipality, is applicable here. The analogy is that acts curing defects in zoning ordi-

nances apply where a legal zoning ordinance was sought to be established—that is, where the law was attempted to be followed, and where, if the town of Coffee City had availed itself of the power to zone and then certain procedures had not been followed, the ordinance would have been validated. The validating act did not apply where it was sought to zone in violation of law.

■ Accordingly, we find Ordinance No. 1 of the town of Coffee City to be invalid because of the failure of the Town Council to provide for a Zoning Commission. We overrule appellants' point two.

Appellants' third point complains of the finding of the trial court that Ordinance No. 1 is invalid for failure to give personal notice to appellee's predecessor in title and for failure to comply with the procedural requirements of Art. 1011d. In view of disposition of points one and two, this point is overruled.

Appellee presents a cross-point complaining of the failure of the trial court to find Ordinance No. 1 invalid because it does not have any substantial relationship to the public health, safety, morals and general welfare of the public as required by Art. 1011a. Appellee points out that the only property in the town of Coffee City located on Highway 155 which was zoned commercial belongs to Mayor Phillips, his brother (who is a member of the Town Council) and to Mayor Phillips' mother, and that Highway 155 is heavily traveled and carries substantially all of the traffic through the town. Moreover, there are only three tracts of land within the corporate limits located on Highway 155 and one of these is owned by the Phillips family, one by Henderson County used as a park, and the third tract is the tract known as the Cora Bradley tract involved here. The Phillips' tract had three residential houses located on it and was zoned commercial while the Bradley tract had one house on it, and it was zoned residential. Ordinance No. 1 provides for seven (7) specifically described areas zoned commercial, and there are six (6) alcoholic beverage stores located in these areas which are scattered at random over the town. The record reflects that the property in the town was zoned residential or commercial according to the request of the individual owner. In our opinion this does not show an attempt to regulate in accordance with a comprehensive plan as required by Art. 1011c.

The witness, Street, a Council member at the time the ordinance was adopted testified that, as zoned, Mayor Phillips and his brother would have the only liquor store on Highway 155, and that this result was known and discussed at the time the ordinance in question was adopted.

Exhibit P–1 shows that the corporate limits of the town consists mainly of long, narrow strips along public roads and such strips have no regular shape and appear to be several miles in length.

■ A zoning ordinance must bear a substantial relation to the public health, safety, morals or general welfare, and if by the terms of the ordinance or as established by the evidence as a matter of law it does not do so, then such ordinance is void. *Weaver v. Ham*, 149 Tex. 309, 232 S.W.2d 704 (1950); *City of Corpus Christi v. Jones*, 144 S.W.2d 388, 397 (Tex.Civ.App.—San Antonio 1940, writ dism'd); 56 Am.Jur.2d Municipal Corporations, Sec. 438, p. 487.

■ The record reveals that the Town of Coffee City was incorporated on December 18, 1969; that the first election of officers was held on January 7, 1970; that Ordinance No. 1 was passed January 19, 1970; and that a local option election for the sale of all alcoholic beverages was held on February 22, 1970.

In Vol. 1, Antieau, Municipal Corporation Law, Sec. 516, p. 5–48, is found this language:

"When the judiciary finds it fairly obvious that a municipal ordinance was motivated by a desire to advance the interests of a particular individual, corporation or group, the courts have been quite willing to invalidate the particular exercise of municipal power as not having a reasona-

ble tendency to protect the public health, safety, morality or general welfare."

If it could be said the trial court erred in failing to find the ordinance invalid because it bore no substantial relation to the public health, safety, morals or general welfare, in view of our disposition of this cause, it was harmless error. Rule 434, T.R.C.P.

The judgment of the trial court is affirmed.