Charles MAYHEW, Sr., Charles Mayhew, Jr., The Estate of Audrey Mayhew, and Sunnyvale Properties, Ltd., Appellants,

v.

The TOWN OF SUNNYVALE, Eloise Patrick, Robert Sanders, Gordon Davis, and Carroll Brown, as Individuals, Appellees.

No. 05–88–00734–CV.

Court of Appeals of Texas, Dallas.

June 9, 1989.

Rehearing Denied Aug. 9, 1989.

Robert D. Barbee, and Douglas A. Cawley, Johnson & Swanson, Dallas, Sarah C. Swanson, Larry Niemann, Niemann & Niemann, Austin, Charles L. Siemon, Andrew Stansell, Siemon, Larsen & Purdy, Chicago, Ill., for appellants.

N. Alex Bickley, Bickley & Associates, Robert F. Brown, Kenneth C. Dippel, Terrence S. Welch, Kent S. Hofmeister, Hutchi-

son, Boyle, Brooks & Fisher, Dallas, for appellees.

Susan Mead, Thomas H. Keen, Dallas, for amicus curiae.

Before WHITHAM, LAGARDE and KINKEADE, JJ.

WHITHAM, Justice.

Denied a proposed planned development sought under the zoning ordinances of the appellee, The Town of Sunnyvale, the appellants, Charles Mayhew, Sr., Charles Mayhew, Jr., the Estate of Audrey Mayhew, and Sunnyvale Properties, Ltd. (Mayhew), brought this action against The Town of Sunnyvale and the additional individual appellees, Eloise Patrick, Robert Sanders, Gordon Davis, and Carroll Brown (the town), challenging the town's zoning ordinances on ten counts. Mayhew appeals from a summary judgment in favor of the town. Mayhew filed no motion for summary judgment. We conclude that the town's alleged violations of the Texas Zoning Enabling Act were cured by validation statutes. Insofar as the trial court's judgment denies Mayhew any relief for the town's violation of the Texas Zoning Enabling Act, we affirm the trial court's judgment. We conclude that the individual defendant-appellees, Eloise Patrick, Robert Sanders, Gordon Davis, and Carroll Brown are entitled to absolute immunity. Insofar as the trial court's judgment denies Mayhew any relief against the appellees, Eloise Patrick, Robert Sanders, Gordon Davis, and Carroll Brown, we affirm the trial court's judgment. We conclude that the trial court did not err in denying Mayhew's first motion to compel testimony from town councilman Robert Sanders. We conclude, therefore, that we need not reverse the trial court's judgment because of error in denying Mayhew's first motion to compel testimony from town councilman Robert Sanders. We conclude that the town, as defendant-movant for summary judgment has failed to establish as a matter of law that there is no genuine issue of material fact as to one or more of the essential elements of Mayhew's multiple causes of action grounded on federal and state constitutional claims. Insofar as the trial court's judgment denies

Mayhew any relief against the Town of Sunnyvale on any of Mayhew's federal and state constitutional claims, we reverse the trial court's judgment and remand the cause for trial on the merits of Mayhew's federal and state constitutional claims. Accordingly, we affirm in part and reverse in part and remand the cause to the trial court for trial on the merits of Mayhew's federal and state constitutional claims.

### The Genuine Issues of Material Fact Inquiry

The present case offers numerous complex and difficult questions for resolution. We do not attempt to discuss all of the asserted genuine issues of material fact briefed by the parties. However, there exists at least one genuine issue of material fact that we consider to be at the heart of this controversy. That fact issue is central to a principal inquiry of whether the town at this point has done anything to give rise to any of Mayhew's federal and state constitutional claims. As trial on the merits unfolds, we are confident that the trial court and the parties will better come to grips with any and all other disputed fact issues necessary to be determined by a fact finder. Certainly, this case illustrates the difficulty presented in attempting by way of summary judgment to dispose of complex and difficult lawsuits involving federal and state constitutional claims.

We begin by repeating well-known rules governing the summary judgment practice. The function of a summary judgment is not to deprive a litigant of his right to a full hearing on the merits of any real issue of fact, but to eliminate patently unmeritorious claims and untenable defenses. *Gulbenkian v. Penn*, 151 Tex. 412, 415–16, 252 S.W.2d 929, 931 (1952). The standards for reviewing a motion for summary judgment are well established. As mandated by the Supreme Court of Texas, they are as follows:

1. The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.

2. In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true.

3. Every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor.

*Nixon v. Mr. Property Management,* 690 S.W.2d 546, 548–49 (Tex.1985). It is not the purpose of the summary judgment rule to provide either a trial by deposition or a trial by affidavit, but rather to provide a method of summarily terminating a case when it clearly appears that only a question of law is involved and that there is no genuine issue of fact. *Gaines v. Hamman,* 163 Tex. 618, 626, 358 S.W.2d 557, 563 (1962). Moreover, when the defendant is the movant, as in the present case, we must be alert to additional rules controlling the summary judgment practice. The question on appeal, as well as in the trial court, is not whether the summary judgment proof raises fact issues with reference to the essential elements of a plaintiff's claim or cause of action, but is whether the summary judgment proof establishes as a matter of law that there is no genuine issue of facts as to one or more of the essential elements of the plaintiff's cause of action. *Gibbs v. General Motors Corp.,* 450 S.W.2d 827, 828 (Tex.1970). Therefore, a defendant is entitled to a summary judgment if he establishes, as a matter of law, that at least one element of plaintiff's cause of action does not exist. *See Rosas v. Buddies Food Store,* 518 S.W.2d 534, 537 (Tex.1975). Furthermore, on a governmental body's motion for summary judgment the presumption of validity accorded governmental decisions cannot be used to affirmatively sustain the movant's burden. The presumptions and burden of proof for an ordinary or conventional trial are immaterial to the burden that a movant for summary judgment must bear. *Missouri–Kansas–Texas R.R. v. City of Dallas,* 623 S.W.2d 296, 298 (Tex.1981). The extraordinary burden resting upon a party challenging an action of a city council to show that the action was illegal and void is a burden for trial on the merits, not on a proceeding for summary judgment sought by the city.

*See Bliss v. City of Fort Worth,* 288 S.W.2d 558, 563 (Tex.Civ.App.—Fort Worth 1956, writ ref'd n.r.e.).

With these principles in mind, we look to the summary-judgment proof for the background to the present controversy. Mayhew is the owner of approximately 1,200 acres of vacant land in the town. The property is regularly shaped and from a geotechnical perspective is suitable for suburban development. The town is a suburb of the City of Dallas situated between the cities of Garland and Mesquite, approximately twelve miles east of the central business district of the City of Dallas, and is accessible by Interstate 30 to the north and by Interstate 20 to the south. The town contains approximately 10,941 acres of land, of which approximately 8,190 is vacant. There are about 675 existing residences in the town and the majority of those residences are developed on lots of less than one acre. In 1965, the town adopted a comprehensive plan and zoning ordinance that provided for the future growth and development of the town. The 1965 plan and zoning ordinance provided for a variety of residential development types including multifamily residences and single family lot sizes as small as 12,000 square feet. In 1973, in response to a problem with septic tank failures in small lot subdivisions, the town amended its zoning ordinance to require a minimum lot size of one acre. Subsequently, sanitary sewer was made available to lands within the town, including Mayhew's property, obviating the need for larger lots to accommodate drainage fields. However, the one acre minimum lot requirement was not repealed. Nor was there any effort to amend the town's comprehensive plan to delete the multifamily forms of residential development and single family housing at densities of up to 3.5 dwelling units per acre from the town's official plan. As a result, all of Mayhew's property, although zoned in three separate zoning districts, is limited to single family residences with a minimum lot size requirement of one acre, even though the town's comprehensive plan provides for a variety of residential densities

for Mayhew's property. In the twelve years since the one acre lot requirement had been in place, only 160 residences have been developed on one acre lots. More than 8,000 acres of vacant land in the town is subject to the town's one acre requirement.

In 1985, Mayhew inquired as to whether the town would consider a planned development under article XV of the town's zoning ordinance, which purported to allow more intensive residential development for well-planned developments. Article XV provides in part:

I. INTENT and PURPOSE. The intent of the Planned Development District (PD) is to provide a flexible, alternative zoning procedure to encourage imagination and innovative design for the unified development of large tracts of land, within overall use regulations set forth in this ordinance, the general land use plan, the thoroughfare plan, and the goals and policies of the development of the Town. The PD District is designed to allow the planned association of different land use such as residential developments of mixed housing, estates, golf courses, green belts, equestrian trails and centers, or office parks, or any appropriate combination of these uses which may be planned, developed or operated as a unified development.

Town officials, including members of the town council, encouraged Mayhew to pursue a high quality planned development, especially one with a golf course. After more than a year of cooperative work with the town, including extensive input from the town's consulting land planner and the expenditure of more than $500,000 for studies and analyses, Mayhew filed an application on July 3, 1986, for development approval for what was to be known as the Mayhew Ranch Planned Development (the "application"). The application for planned development and supporting materials proposed a range of development intensities with various types of housing units arranged around more than 300 acres of common or open space including a golf course. As was the practice of the town, the application for the Mayhew Ranch Planned De-

velopment was referred to the town's consulting planner for review. The consulting planner concluded that the application met the requirements for a planned development under article XV of the town's zoning ordinance. The consulting planner, in fact, included the proposed planned development in the updated comprehensive plan he produced for the town because he believed it was a superior plan for the use of the property in terms of sound and responsible planning. Mayhew met or exceeded each of the enumerated requirements for a planned development. Nevertheless, in the face of "political" opposition from residents of the town (most of whom live on lots of less than one acre) the town council denied the application for development approval on January 13, 1987. In the mayor's words because "we just couldn't get it together." The reasons for opposition to the planned development were two-fold: first, the residents like having the Mayhew property as "free" open space; and second, the possibility that "undesirable persons" might move into the town if the Mayhew Ranch Planned Development were approved.

■ In multiple points of error, Mayhew contends, *inter alia*, that the town violated his federal and state constitutional rights to procedural due process, substantive due process, and equal protection, and that the town's decision effected a taking of his property without payment of just or adequate compensation. Mayhew grounds these claims on the Fifth and Fourteenth Amendments of the United States Constitution and article I, section 19 of the Texas Constitution (procedural and substantive due process); the Fourteenth Amendment and article I, section 3 of the Texas Constitution (equal protection); The Fifth and Fourteenth Amendments and article I, section 17 of the Texas Constitution (taking without payment of just or adequate compensation); and Texas Revised Civil Statutes articles 1011b and 1011c (now recodified as sections 211.004, 211.005, and 211.013 in the Texas Local Government Code). The claims were brought pursuant to sections 1983 and 1988 of title 42 of the United States Code and sections 37.003 and 65.011

of the Texas Civil Practice and Remedies Code. Central to Mayhew's contentions is the argument that public outcry or demands caused the town to take his property and not the public health, safety, and welfare. In this connection, we recognize a basic concept of private property ownership. While property may be regulated to a certain extent, if regulation goes too far, it will be recognized as a taking. *We are in danger of forgetting that a strong public desire to improve the public condition is not enough to warrant achieving the desire by a shorter cut than the constitutional way of paying for the change. Pennsylvania Coal Co. v. Mahon,* 260 U.S. 393, 415–16, 43 S.Ct. 158, 160, 67 L.Ed. 322 (1922) (emphasis added).

Mayhew does not challenge the town's right to zone. Instead, Mayhew contends that the town's zoning activities have "stonewalled" him to the point that he can do nothing with his property that will satisfy the town, thus leaving him holding legal title to 1200 acres of unimproved land, taken and used, however, by the residents of the town as desired open space necessary to afford the residents a rustic environment in which to live.[1] In the language of the United States Supreme Court, Mayhew insists that it will be a very curious and unsatisfactory result if it shall be held that if the government refrains from the absolute conversion of real property for the public use it can destroy the property's value entirely, can inflict irreparable and permanent injury to any extent, can, in effect, subject the property to total destruction without making any compensation, because, in the narrowest sense of that word, it is not taken for the public use. *See Pumpelly v. Green Bay & Miss. Canal Co.,* 80 U.S. (13 Wall.) 166, 177–80, 20 L.Ed. 557 (1872). We agree.

The protection of private property in the Fifth Amendment presupposes that it is wanted for public use, but provides that it shall not be taken for such use without compensation. A similar assumption is made in the decisions upon the Fourteenth Amendment. When this seemingly absolute protection is found to be qualified by the police power, the natural tendency of human nature is to extend the qualification more and more until at last private property disappears. But that cannot be accomplished in this way under the Constitution of the United States. *Mahon,* 260 U.S. at 415, 43 S.Ct. at 160, per Mr. Justice Holmes. The present case focuses upon whether the natural tendency of human nature to which Mr. Justice Holmes refers remains alive and well. Thus, in the present case it must ultimately be determined whether the town has left open the door for Mayhew to make new application under article XV of the town's zoning ordinance or closed the door to further applications. If the door is closed, then Mayhew cannot develop his land. A property owner need not engage in futile reapplications. *See MacDonald, Sommer & Frates v. Yolo County,* 477 U.S. 340, 106 S.Ct. 2561, 2568 n. 8, 91 L.Ed.2d 285 (1986). Mayhew insists that a genuine issue of material fact exists as to whether the town has closed the door. We agree.

In doing so, we find instructive the Supreme Court's decision in *City of Austin v. Teague,* 570 S.W.2d 389 (Tex.1978). In *Teague,* local residents appeared before the city council and urged the council to stop further development of Teague's land and asked the council to take steps to have the site preserved as a scenic easement bordering the southern approach to downtown. Teague applied to the city for a permit required to proceed with preparation of the land for development. The city denied the application. So it went with Teague's second and third applications. Teague sued the city for damages for inverse condemna-

---

**1.** Amicus curiae, The Lupshire Company, tells us that it is the owner of approximately 1,042 acres of land located in the town and that it is also an unsuccessful applicant for a zoning change in the town, having received a final denial from the town council on April 10, 1989. Lupshire also tells us that like Mayhew, the Lupshire request involved a tract of land over 1,000 acres, large enough to be self-sustaining and self-contained, was for residential uses on lots less than one acre, and was involved in the zoning process for more than a year, at a cost of several hundred thousand dollars.

tion of his land.[2]  *Teague,* 570 S.W.2d at 390–91.  From the Court of Civil Appeals' opinion in *Teague* we know that it is a fact question whether a municipality refuses to allow development with the intention to prevent all development of a tract and preserve it as an easement for the benefit of the public.  We quote the opinion of the Court of Civil Appeals:

> Trial was to a jury which found: Issue 1.  Defendant thru [sic] its course of conduct between January 1973 and June 26, 1975, refused to allow plaintiffs to alter the portions of Harpers Branch and the Ramble which cross plaintiffs' tract of 8.51 acres *with the intention* to prevent all development of that tract and preserve it as a scenic easement for the benefit of the public.

*City of Austin v. Teague,* 556 S.W.2d 400, 401 (Tex.Civ.App.—Waco 1977), *rev'd on other grounds,* 570 S.W.2d 389 (Tex.1978) (emphasis added).  In this connection, we observe that the issue of intent is not susceptible to being readily controverted and is best left to the determination of the trier of fact.  *See Futerfas v. Park Towers,* 707 S.W.2d 149, 157 (Tex.App.—Dallas 1986, writ ref'd n.r.e.).  Returning to the Supreme Court's opinion in *Teague,* we note that the Supreme Court concluded that the landowners demonstrated to both the jury and the trial court that the City of Austin, by rejecting the third application for a Waterway Development Permit, sought to impose a servitude upon the property to preserve "the natural and traditional character of the land and waterway"—that is, the city wanted to use plaintiffs' land as a scenic easement on the southern approach to the City of Austin.  *Teague,* 570 S.W.2d at 394.  In reaching this conclusion, the Supreme Court reasoned that at the time the city denied the third application for a permit, Teague lost all use of his land; the city by indirection acquired the scenic easement at no cost which it had recommended that the State Highway Department acquire by purchase.  In doing so it also singled out Teague to bear all of the cost

for the community benefit without distributing any cost among the members of the community.  *Teague,* 570 S.W.2d at 394.

With *Teague* in mind, we next consider Mayhew's summary judgment evidence said to raise a genuine issue of material fact as to whether the town refused to allow development with the intention to prevent all development of Mayhew's land and preserve it as open space to afford the town's residents a rustic environment in which to live.  In short, we now discuss Mayhew's evidence asserted to show that the town closed the door to a further application in order to preserve Mayhew's land as a scenic natural park for the benefit of the public.  We conclude that the judicial system must have this factual circumstance resolved before it can decide whether Mayhew's property has been taken.  *See Yolo County,* 106 S.Ct. at 2567–69.  The town would have us view the summary judgment proof as showing that Mayhew walked through the door of the town hall on January 13, 1987, presented the town with an all or nothing proposition, and then proceeded to bring this action when his application was denied.  We conclude that the summary judgment proof tells us more.

Mayhew's application was considered for a period of more than six months.  Mayhew had initiated discussions with the town in regard to the proposed development more than a year prior to the town's decision, meeting with town officials on more than twenty occasions *prior* to submitting the application.  Mayhew worked closely with representatives of the town, including the town planner, in coming up with an acceptable design proposal, spending over one-half of one million dollars in providing information and studies to provide information showing that the proposed development satisfied the requirements of the town's planned development ordinance and would be an asset to the town.  In November of 1986, about half way through this process, the town decided to revise its comprehensive plan by substantially decreasing

---

**2.**  Inverse condemnation, i.e., uncompensated taking of property.  *Murmur Corp. v. Board of Adjustment of Dallas,* 718 S.W.2d 790, 809 (Tex. App.—Dallas 1986, writ ref'd n.r.e.) (Whitham, J., concurring).

the amount of density that would be permitted in the town, all while Mayhew's application was pending. Subsequently, Mayhew's representatives met with town officials, including the town attorney, the town manager, council member Brown, and council member Sanders, to discuss the proposed development. At that meeting, Mayhew agreed to scale down the application substantially from the 5,025 units originally sought to 3,600 dwelling units and to abandon the apartments because of the town's "concerns" over the inclusion of apartments and other forms of low and moderate cost housing in the proposed development. In the end, Mayhew acceded to the demands of the town officials. But when the time came for the town council to vote on the application, the town council balked, and considered and then rejected an entire range of development proposals with densities between 1.0 and 2.93 dwelling units per acre. Indeed, the record shows that the town council considered and rejected countless other alternatives and permutations of the development proposals presented by Mayhew. Thus, in the face of "political" opposition from residents of the town, the town council denied the application for development approval on January 13, 1987. In the mayor's words, because "we just couldn't get it together."

In the event that the summary judgment proof can be said to raise genuine issues of material fact, the town advances the "debatable or issuable doctrine." The town argues that the doctrine "stands for the proposition that a proponent of a zoning ordinance or land use decision is entitled to summary judgment as to the validity of the ordinance or decision where conditions either conclusively support the passage of the ordinance or land use decision, or make the passage of the ordinance or land use decision *issuable or debatable.*" (Emphasis added). The "debatable or issuable" language is said to have been used by the Texas Supreme Court in *Baccus v. City of Dallas,* 454 S.W.2d 391, 392 (Tex.1970), relied upon by the town. The Supreme Court agreed with our holding that, to prevail in a conventional trial on the merits, the burden is on a contestant to show that no conclu-

sive or even controversial facts or conditions exist which offer support for action of a city's governing body in amending a zoning ordinance. *Baccus,* 454 S.W.2d at 392. A contestant has the same burden when he seeks a summary judgment invalidating an ordinance. However, that is not the rule for determining whether the proponents of such an ordinance are entitled to a summary judgment sustaining its validity. *Baccus,* 454 S.W.2d at 392. In moving for a summary judgment, proponents have the burden of establishing affirmatively by summary judgment proofs that conditions either conclusively support passage of the ordinance or make that action *debatable or issuable.* Only thus may the proponents establish validity of the ordinance as a matter of law as is required by Rule 166–A(c), of the Texas Rules of Civil Procedure. *Baccus,* 454 S.W.2d at 392. The Supreme Court then went on to describe summary judgment proof necessary to establish that the city's action was debatable or issuable. The evidence before the council raised issues over which reasonable men could differ. *Baccus,* 454 S.W.2d at 392.

We do not read *Baccus* to hold that, if reasonable men could differ as to the intent of a municipality in refusing to allow land development, no genuine issues of material fact exist on motion for summary judgment. We do not read *Baccus* to so hold for three reasons. First, we note that whether the town can take Mayhew's property without paying for it is not "debatable and issuable." From what has been said above, inverse condemnation is not permitted. Therefore, there is nothing over which reasonable men can differ sitting as town council. Second, we reason that if the "debatable or issuable doctrine" was applicable in a case of inverse condemnation, the Supreme Court would have told us so in *Teague.* The Supreme Court did not. Instead, the Supreme Court treated the municipality's intent to be a question for the fact finder. Third, the Supreme Court tells us the limits of the "debatable and issuable doctrine" in summary judgment cases involving land use decisions. *See City of Univ. Park v. Benners,* 485 S.W.2d

773 (Tex.1973), also relied upon by the town. In both *Baccus* and *Benners*, both parties filed motions for summary judgment. *Benners* is instructive. As to the city's motion for summary judgment, the rule for determining whether the proponents of a zoning ordinance are entitled to a summary judgment sustaining its validity is different from that of a contestant of the ordinance. Proponents are under the burden of establishing by summary judgment proof that conditions either conclusively support passage of the ordinance or make that action debatable or issuable. *Benners*, 485 S.W.2d at 781. The Supreme Court then indicates that "debatable or issuable" applies in situations in which cross-motions are made. The Supreme Court elaborates. "Our view is that the conditions shown by the summary judgment evidence establishes that, at the least, the legislative action of the governing body of the City in enacting the ordinances was issuable. Respondent does not contend for a remand for the development of further facts, no doubt in recognition that the summary judgment record presents the salient facts of the controversy." *Benners*, 485 S.W.2d at 781. Therefore, facts are not debatable or issuable if both parties are standing on the summary judgment record as providing the necessary facts of the controversy. As noted, the present case is not one in which cross-motions were filed. Mayhew filed no motion for summary judgment. Indeed, in the third case relied upon by the town as mentioning the "debatable or issuable doctrine," there was only the city's motion for summary judgment. *See Albert v. City of Addison*, 566 S.W.2d 298 (Tex.1978). In *Albert*, the Supreme Court declined to apply the doctrine. "The City argues that the judgment of the Court of Civil Appeals is nevertheless sustainable because even if the proper burden of proof rule is applied, it has established its right thereto as a matter of law. We disagree." *Albert*, 566 S.W.2d at 299. "The summary judgment proofs of the City do not meet the requirements of *Bliss v. City of Fort Worth*, 288 S.W.2d 558 (Tex.Civ.App.—Fort Worth 1956, writ ref'd n.r.e.), in that they fail to show what matters were considered by the City Council at the meeting in which it took the action complained of here." *Albert*, 566 S.W.2d at 299. At this point, we repeat our above citation to *Bliss*. The extraordinary burden resting upon a party challenging an action of a city council to show that the action was illegal and void is a burden for trial on the merits, not on a proceeding for summary judgment sought by the city. *See Bliss*, 288 S.W.2d at 563. Consequently, we conclude that the "debatable or issuable doctrine" has no application in the disposition we make of Mayhew's appeal of summary judgment in favor of the town. We emphasize that such disposition is based on Mayhew's contention of a "taking" asserted to be inverse condemnation and the existence of a genuine issue of material fact as to the town's intention. With the "debatable or issuable doctrine" behind us, we return to the genuine issues of material fact inquiry on the summary judgment record before us. In this connection, we are mindful that merely because the facts are undisputed does not always eliminate the right to a fact finding. If reasonable minds can draw different inferences or conclusions from undisputed facts, a fact issue is presented. *Commercial Standard Ins. Co. v. Davis*, 134 Tex. 487, 137 S.W.2d 1, 2 (1940).

On motion for summary judgment, the movant-town has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Moreover, in deciding whether there is a disputed material fact issue precluding summary judgment, we must treat evidence favorable to Mayhew as true and we must indulge every reasonable inference in favor of Mayhew and resolve any doubts in Mayhew's favor. *Nixon*, 690 S.W.2d at 548–49. Applying these rules, we conclude that the summary judgment proof establishes a genuine issue of material fact as to whether the town, by rejecting Mayhew's application, intended to prevent Mayhew's development of his property in order to impose a servitude upon the property to preserve the natural and traditional character of the land for the benefit of the public. *See Teague*, 570 S.W.2d at 394. Although other fact issues

may exist as to one or more of Mayhew's claims, this "intent" fact is the linchpin of Mayhew's claims that he has suffered deprivation of federal and state constitutional rights to procedural due process, substantive due process and equal protection, and a taking of his property without payment of just or adequate compensation. We conclude, therefore, that the town, as defendant-movant for summary judgment, has failed to establish as a matter of law that there is no genuine issue of material fact as to one or more of the essential elements of Mayhew's multiple federal and state constitutional claims. Consequently, we conclude further that the trial court erred in granting the town's motion for summary judgment as to Mayhew's federal and state constitutional claims. We sustain Mayhew's points of error one through five and seven through nine. In doing so, we express no opinion on the merits of any of Mayhew's federal and state constitutional claims. The disposition of the merits of those claims awaits trial on the merits. Moreover, our conclusion that a genuine issue of material fact exists is not to be read as holding that no other fact issues exist or as suggesting the wording of any question submitted to the jury. The existence or not of other fact issues and the wording of any question or questions submitted to the jury, if there be a jury, are in the first instance to be resolved by the trial court.

### Matters Asserted to Support the Trial Court's Judgment in Whole or in Part

We now turn to Mayhew's points of error addressing defensive issues raised by the town on its motion for summary judgment. We must decide the town's defensive issues because the trial court granted the town's motion for summary judgment in its entirety without explanation.

In its sixth point of error, Mayhew contends that the trial court erred in granting summary judgment (1) because the Texas Zoning Enabling Act (Texas Revised Civil Statutes article 1011a, *et seq.*, now recodified in the Texas Local Government Code sections 211.001, et seq.) applies to the town as a matter of law, (2) because the town's zoning ordinance was not made in accordance with a comprehensive plan (3) because Mayhew has standing to challenge the validity of the ordinance and (4) because violations of the Act are not cured by validation acts. Mayhew alleged that the town's zoning ordinance is void because the ordinance failed to comply with the requirements of the Texas Zoning Enabling Act. The town moved for summary judgment, contending that the Texas Zoning Enabling Act did not apply to them, that the town did not have to adopt the required plan, that Mayhew was without standing to challenge the town's failure to comply with the Texas Zoning Enabling Act, and that it did not matter that the town violated the Texas Zoning Enabling Act because validation statutes cured these defects. We conclude that none of the town's first three contentions have merit and that the trial court erred as a matter of law if it determined that any of them were "well taken." We conclude further, however, that the town's fourth argument as to validation statutes has merit.

■ *Application of the Texas Zoning Enabling Act to the town.* The town first argues that because the town is a general law city, the Texas Zoning Enabling Act does not apply to the town, citing *City of Brookside v. Comeau,* 633 S.W.2d 790 (Tex.1982), *cert. denied* 459 U.S. 1087, 103 S.Ct. 570, 74 L.Ed.2d 932 (1986). A plain reading of *City of Brookside*, however, shows that the case actually stands for the proposition that when a general law city *that has not previously adopted a comprehensive plan* seeks to adopt an ordinance which would have the *effect* of regulating the use of land as distinguished from "zoning," it may do so under its general police power. *City of Brookside,* 633 S.W.2d at 793 & n. 4 (mobile home regulation). We conclude that *City of Brookside* does not hold that a city that undertakes to impose "zoning" regulations is free to ignore the dictates of the Texas Zoning Enabling Act. The courts of this State have held ordinances and amendments to ordinances invalid where the express, mandatory provisions of our zoning statute have

not been complied with. *Bolton v. Sparks,* 362 S.W.2d 946, 950 (Tex.1962). It is undisputed that the town has a comprehensive plan, that it has had such a plan since 1965, that the regulations at issue are "zoning" regulations, and indeed, that the town's zoning ordinance expressly provides that it was *made in accordance with a comprehensive zoning plan.* Hence, we do not read *City of Brookside* to mean that the town is free to ignore the requirements mandated by the Texas Zoning Enabling Act when it undertakes zoning. It is undisputed that the town is a general law city and it is well settled that under the Texas Constitution, general law cities possess only those powers chartered by general law. *See* TEX. CONST. art. XI, § 4 (cities with populations of 5,000 and less). We conclude that articles 1011b and 1011c of the Texas Revised Civil Statutes (now recodified as sections 211.004, 211.005, and 211.013 of the Local Government Code) apply to general law cities, and therefore, the town, a general law city, must comply with the statutory requirements of these statutes. A general law city must look to general law for its authority to exercise municipal powers. Texas law is settled that general law cities derive their authority to exercise governmental powers from general law itself. *See, e.g., Hope v. City of Laguna Vista,* 721 S.W.2d 463, 463–64 (Tex.Civ.App.—Corpus Christi 1986, writ ref'd n.r.e.) (general law city possesses only those powers and privileges conferred by law). Next, it is also settled that the Texas Zoning Enabling Act, a general law, applies to general law cities as a matter of law. *See, e.g., Coffee City v. Thompson,* 535 S.W.2d 758, 763–67 (Tex.Civ.App.—Tyler 1976, writ ref'd n.r.e.) (invalidating the zoning ordinance of the Town of Coffee City, a general law city with a population of less than 1,000, in its entirety for failure to comply with the requirements of article 1011 et seq.); *Massengale v. City of Copperas Cove,* 520 S.W.2d 824, 828 (Tex.Civ.App.—Waco 1975, writ ref'd n.r.e.) (non-home rule city must look to article 1011 *et seq.* for authority to enact zoning regulation); *City of San Antonio v. Lanier,* 542 S.W.2d 232, 234 (Tex.Civ.App.—San Antonio 1976, writ ref'd n.r.e.) (Texas municipalities derive their power to zone exclusively from the enabling statutes, article 1011a, et seq.). Thus the trial court erred as a matter of law if it concluded that the town may zone without consideration of the Texas Zoning Enabling Act.

*Ordinance made in accordance with a comprehensive plan.* Texas statutes require that zoning be "in accordance with a comprehensive plan" (*see* article 1011c, TEX.REV.CIV.STAT.ANN.) and have contained this requirement since 1927. The zoning enabling acts of most other jurisdictions also contain this requirement, which is derived from the Standard State Zoning Enabling Act (U.S. Dep't Commerce, 1924). *See* Haar, *In Accordance With A Comprehensive Plan,* 68 HARV.L.REV. 1154, 1158 (1955). Mayhew alleged that the town's zoning ordinance was not made in accordance with a comprehensive plan and that the ordinance itself is not a comprehensive plan. The town argues in response that article 1011c does not mean what it says, that the zoning map which is a part of its ordinance constitutes a comprehensive plan, and that the map and ordinance were "dispositive" of whether there was an existing plan. The thrust of Mayhew's challenge (and article 1011c), however, is not whether there was "an existing plan" but whether the zoning ordinance that was adopted was *made in accordance with* a comprehensive plan.

■ Mayhew recognizes that Texas courts, in responding to challenges that zoning is invalid because of a local government's failure to adopt a comprehensive plan, have found comprehensive, coherent, and logical zoning ordinances themselves sufficient to satisfy the *"in accordance with"* requirement. *See, e.g., Benners,* 485 S.W.2d 773, *passim* (geographic comprehensiveness); *Coffee City v. Thompson,* 535 S.W.2d 758 (Tex.Civ.App.—Tyler 1976, writ ref'd n.r.e.) (substantive comprehensiveness). But that is not the case where a municipality has a separately adopted comprehensive plan. In such a case, the law is settled that the adopted comprehensive plan must, by statutory mandate, serve as

the basis for subsequent zoning amendments:

> *A comprehensive zoning ordinance is law that binds the municipal legislative body itself.* Art. 1011c. The legislative body does not, on each rezoning hearing, redetermine as an original matter, the city's policy of comprehensive planning. The law demands that the approved zoning plan should be respected.... *The duty to obey the existing law forbids municipal actions that disregard not only the pre-established zoning ordinance but also the long-range master plans and maps that have been adopted by ordinance.*

*City of Pharr v. Tippitt,* 616 S.W.2d 173, 176–77 (Tex.1981) (emphasis added) (citations omitted). It is apparent that the town's ordinance fails to meet the requirements of article 1011c in both respects because, on the record in this cause, it is clear that the town *already had* a separate comprehensive plan which it chose to ignore in adopting its 1983 zoning ordinance.

The facts of the present case are that the town adopted a comprehensive plan in 1965 and that the town's zoning ordinance was amended in 1973 to require a minimum lot size of one acre for all single family detached dwellings without regard to, and creating a pattern that is patently inconsistent with the 1965 plan. Perhaps the most egregious example of this inconsistency lies in the fact that while the 1965 plan allocated a substantial portion of the town's area to single family uses on lots with an average size of 12,000 square feet (3.6 dwelling units per acre), the 1983 zoning ordinance requires that such uses be on lots that are not smaller than 43,560 square feet (1 acre). And while the 1965 plan allocated approximately 93 acres for multiple family use, the 1983 ordinance does not permit the construction of such housing in any part of the town. Further, the record shows that the 1965 plan was still in effect when the town adopted its zoning ordinance in 1983. The record further demonstrates that the 1983 zoning ordinance was not made in accordance with, and in fact obviously and directly conflicted with, the town's adopted comprehensive plan. In-

deed, the town's own planner testified in his deposition that the zoning ordinance was *not* made in accordance with a comprehensive plan. We conclude that the 1973 amendment requiring a minimum lot size of one acre violated the requirement that zoning be made in accordance with a comprehensive plan. Nor can there be any doubt that the zoning applied to Mayhew's property is irrational and unsupported by a logical or coherent comprehensive plan. Indeed, uncontroverted evidence adduced by the town shows that in 1986, when the town council recognized that the sound planning of the 1965 plan and the comprehensive plan report prepared by its professional consultant conflicted with the town's predilection for one acre zoning, the town directed its consultant to remove all substance from the so-called plan that was ultimately adopted in November 1986. Shortly thereafter, the draft comprehensive plan was substantially amended at the direction of the town council to remove all references to density. This kind of after-the-fact justification of pre-judged ideas is the antithesis of comprehensive planning and fundamental fairness. Indeed, we decline to approve the concept that pre-ordained results dictated by political hue and cry can be sound planning. Hence, the trial court erred as a matter of law if it concluded that the town's zoning ordinance was made in accordance with a comprehensive plan.

■ *Mayhew's standing to challenge violation of article 1011b.* Mayhew alleged that the town's zoning ordinance violates article 1011b in that the ordinance is not uniform for each class or kind of building in each district. The town raises the argument that Mayhew does not have standing to challenge the ordinance. We disagree. The Declaratory Judgment Act authorizes any person whose rights are affected by a municipal ordinance to seek a declaration of the "rights, status, and other legal relations whether or not further relief is or could be claimed." TEX.CIV.PRAC. & REM.CODE ANN. §§ 37.003(a) & 37.-004(a) (Vernon 1986). It has long been recognized that everyone has a fundamen-

tal right to use their property, subject only to the lawful exercise of the police power. *See, e.g., Lynch v. Household Finance Corp.*, 405 U.S. 538, 552, 92 S.Ct. 1113, 1121, 31 L.Ed.2d 424 (1972). In the absence of the town's zoning ordinance, Mayhew would have the right to make such use of his property as he saw fit, provided that the use did not operate to the harm of others. We conclude that the use of Mayhew's property has been and continues to be affected by the challenged zoning provisions and that he is entitled *not* to have the reasonable use of his property interfered with by a regulation failing to comply with state law. We conclude further, therefore, that Mayhew has standing to seek a declaration of whether the town's zoning ordinance is in compliance with article 1011b. Hence, it follows that the trial court erred as a matter of law if it concluded that Mayhew did not have standing to challenge the town's alleged violation of article 1011b.

■■■■■ *Validation statutes and violations of the Texas Zoning Enabling Act.* We begin by noting Mayhew's posture on appeal concerning this issue. Mayhew tells us in his brief that "[t]he Original Petition alleged that the [town's zoning ordinance] is void because the ordinance failed to comply with the requirements of the Texas Zoning Enabling Act." Hence, compliance with state statute is the issue; not the statute's constitutionality. Although Mayhew insists that the town's challenged zoning ordinance was not made in accordance with a comprehensive plan as required by the Texas Zoning Enabling Act, we must now decide if subsequent validation statutes deny Mayhew his cause of action based on failure to comply with the state statute. We conclude that the challenged zoning ordinance is not subject to attack on the grounds of the town's failure to comply with the Texas Zoning Enabling Act. We reach this conclusion because since the town's challenged action, the legislature has enacted validating statutes. The current validating statute became effective May 20, 1987. TEX.REV.CIV.STAT.ANN. art. 974d–36 (Vernon Supp.1989). The validating statutes apply to a town operating under general law. Article 974d–36, section 1. Article 974d–36 provides in section 3(b) that all governmental proceedings performed by the governing bodies of all such cities and towns and their officers since their incorporation are validated as of the date of such proceedings. Mayhew argues that a validation statute may not be used to cure substantive defects such as those alleged in the present case. We disagree. Validation acts are remedial and are to be liberally construed. *Murmur Corp.* at 793. They apply to amendatory zoning ordinances. *Murmur*, 718 S.W.2d at 793. Although validation statutes may not cure constitutional defects, they may cure defects that do not render the ordinance unconstitutional. *Murmur*, 718 S.W.2d at 793. As noted, Mayhew asserts no constitutional defect. Because the irregularity challenged by Mayhew did not affect a constitutional right, we conclude it was the intention of the legislature to cure this type of defect and that the alleged violation of the Texas Zoning Enabling Act was validated. *See Murmur*, 718 S.W.2d at 793. Hence, it follows that the trial court did not err as a matter of law if it concluded that the town's alleged violations of the Texas Zoning Enabling Act were cured by validation statutes. Insofar as the trial court's judgment denies Mayhew any relief for the town's violation of the Texas Zoning Enabling Act, we overrule Mayhew's sixth point of error and affirm the trial court's judgment in part. We sustain the remainder of Mayhew's sixth point of error. Our disposition of Mayhew's sixth point of error is not to be read as affirming the trial court's judgment as to Mayhew's claims for violations of federal and state constitutional rights to procedural due process, substantive due process, and equal protection, and as to Mayhew's claim that the town's decision effected a taking of his property without payment of just or adequate compensation.

■■■ In his tenth point of error, Mayhew contends that the trial court erred in granting summary judgment for the town because the doctrine of governmental function does not bar Mayhew's claims. May-

hew's claims can be divided into three categories: (1) federal constitutional claims, (2) state constitutional claims, and (3) state statutory claims. In its brief the town tells us that "[the town does] not challenge [Mayhew's] assertion that the doctrine of governmental function does not bar federal and state constitutional claims, but that doctrine does bar [Mayhew's state statutory claims] and the trial court correctly dismissed those claims." We have earlier found that Mayhew has no state statutory claims. We read the town's brief to tell us that it agrees that the doctrine of governmental function does not bar Mayhew's remaining federal and state constitutional claims. Hence, it follows that the trial court erred if it concluded that the doctrine of governmental function barred Mayhew's federal and state constitutional claims. We sustain Mayhew's tenth point of error insofar as it applies to Mayhew's federal and state constitutional claims.

■ In his eleventh point of error, Mayhew contends that the trial court erred in granting summary judgment for the town because Mayhew's claims lie outside the scope .of sovereign immunity and are not subject to notice of claim procedures. The town's motion for summary judgment was also based in part on the assertion that Mayhew was barred from recovering damages under state law because Mayhew allegedly failed to file a notice of claim. We have earlier found that Mayhew has no state statutory claims. In its brief, the town tells us that it "has never contended that a notice of claim must be filed relative to alleged federal law violation; however, [Mayhew] must file a notice of claim with [the town] for [Mayhew's] alleged state constitutional violations." We read the town's brief to tell us that it agrees that Mayhew need not file a notice of claim relative to its federal constitutional claims. Therefore, the sole issue before us is whether Mayhew must file a notice of claim as to his state constitutional claims. In *San Antonio River Authority v. Garrett Brothers,* 528 S.W.2d 266 (Tex.Civ. App.—San Antonio 1975, writ ref'd n.r.e.), the plaintiff sought damages for inverse condemnation under article I, section 17 of the Texas Constitution. *Garrett,* 528 S.W.2d at 272. The charter provision requiring the giving of a notice of claim of injury is not applicable to a case of this nature. *Garrett,* 528 S.W.2d at 274. Hence, it follows that the trial court erred if it concluded that Mayhew was required to file a notice of claim as to its federal and state constitutional claims. We sustain Mayhew's eleventh point of error insofar as it applies to Mayhew's federal and state constitutional claims.

■ In his twelfth point of error, Mayhew contends that the trial court erred in granting summary judgment for lack of jurisdiction because Mayhew has complied with the requirements of the Declaratory Judgment Act as a matter of law. The town's motion for summary judgment was also based in part on the assertion that the trial court was without jurisdiction to render declaratory or injunctive relief because Mayhew did not comply with the requirements of the Declaratory Judgment Act in regard to serving a copy of the Original Petition on the Texas Attorney General. The Texas Declaratory Judgment Act provides that if a municipal ordinance is alleged to be unconstitutional, "the attorney general of the state must also be served with a copy of the proceeding and is entitled to be heard." TEX.CIV.PRAC. & REM.CODE ANN. § 37.006(b) (Vernon 1986). It is undisputed that the Texas Attorney General was served with a copy of the proceeding on or about February 2, 1988, and that an appearance was filed on behalf of the State of Texas on or about March 4, 1988, prior to the hearing on the town's motion. We conclude that nothing in the Act requires that service be had within a particular period of time. The appearance filed on behalf of the State unambiguously shows that the Attorney General has declined to participate in this action because the constitutionality or validity of a state statute has not been challenged. Although the town argued that service was insufficient because an unreasonable amount of time had elapsed before notice was given, it is clear that courts have taken a different view of this matter

and have held that "Texas requires only substantial compliance with section 11 [now 37.006(b)] of the Declaratory Judgments Act." *City of Garland v. Louton,* 691 S.W.2d 603, 605 (Tex.1985). Hence, it follows that the trial court erred if it concluded that it lacked jurisdiction because Mayhew failed to comply with the requirements of the Declaratory Judgment Act in regard to serving a copy of the original petition on the Texas Attorney General. We sustain Mayhew's twelfth point of error.

In his thirteenth point of error, Mayhew contends that the trial court erred in granting summary judgment for the individual defendants because genuine issues of material fact exist and the individual defendants were not entitled to judgment as a matter of law. Mayhew alleged that the individual defendants violated Mayhew's federal and state constitutional rights in denying his application for planned development. The thrust of Mayhew's contention is that the individual defendants knew that Mayhew's application complied with each of the requirements of article XV of the zoning ordinance but nevertheless voted to deny for reasons other than those established by article XV. The individual defendants seek to avoid judicial review of their actions by claiming that they acted in a legislative capacity in applying the previously established standards of article XV to Mayhew's application and that they were therefore entitled to absolute immunity. In the alternative, the defendants urged that they were entitled to qualified immunity because they acted in the scope of their immunity with the good faith belief that their actions were lawful. Mayhew tells us in his brief that "[f]ederal law provides an absolute immunity from liability for a specified class of government officials engaging in a narrowly drawn class of activities, and the act of legislation has long been recognized as an activity warranting such immunity. *See Harlow v. Fitzgerald,* 457 U.S. 800, 807, 102 S.Ct. 2727, 2732, 73 L.Ed.2d 396 (1980)." Thus, we reach the question of whether the individual defendants acted in a legislative capacity when they voted to deny Mayhew's application for planned de-velopment under article XV of the zoning ordinance. When a zoning body acts on an individual request, it is motivated by legislative concerns—its role is to decide the best course for the community and not necessarily to adjudicate the rights of contending parties. *Mahone v. Addicks Util. Dist.,* 836 F.2d 921, 934 (5th Cir.1988). We conclude, therefore, that the individual defendants acted in a legislative capacity. Therefore, the individual defendants are entitled to absolute immunity. Consequently, the individual defendants were entitled to judgment in their favor as a matter of law. Hence, it follows that the trial court did not err if it concluded that the individual defendants were entitled to judgment in their favor as a matter of law. We overrule Mayhew's thirteenth point of error and affirm the trial court's judgment as to Eloise Patrick, Robert Sanders, Gordon Davis, and Carroll Brown in their individual capacities.

## *A Discovery Issue*

In his fourteenth point of error, Mayhew contends that the trial court erred in denying his first motion to compel testimony from town councilman Robert Sanders. The dispute centers on Sanders's argument that he should not be made to testify concerning legislative action. We agree. Judicial review of legislative action should be restricted to examination of the language of the law in question and official legislative records. *Sosa v. City of Corpus Christi,* 739 S.W.2d 397, 405 (Tex.App. —Corpus Christi 1987, no writ). Individual legislators may not be questioned to determine the evidence upon which they relied or their reasons for voting a particular way. *Sosa,* 739 S.W.2d at 405. These principles are consistent with the basic doctrine that the subjective knowledge, motive, or mental process of an individual legislator is irrelevant to a determination of the validity of a legislative act because the legislative act expresses the *collective will* of the legislative body. *Sosa,* 739 S.W.2d at 405. Furthermore, public policy dictates that individual legislators be incompetent witnesses regarding a law enacted by the

legislature as a body. Legislators' hands must not be bound by a possibility of being haled into court to testify any time a legislative action is questioned. *Sosa*, 739 S.W.2d at 405. We conclude, therefore, that the trial court did not err in denying Mayhew's first motion to compel testimony from town councilman Robert Sanders. We overrule Mayhew's fourteenth point of error.

For the above reasons, we affirm the trial court's judgment in part and we reverse the trial court's judgment in part and remand the cause to the trial court for trial on the merits of Mayhew's federal and state constitutional claims.